

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DAVID KELLAR, | ) | CASE NO. 1:06 CV 677 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| BRIAN CAIN, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On March 24, 2006, plaintiff pro se David Kellar filed the above-captioned action under 42 U.S.C. § 1983 against Richland Correctional Institution ("RCI") Medical Administrator Brian Cain, RCI Physician Kenneth Williams, RCI Warden Julius Wilson, and RCI Deputy Warden of Special Services Dennis Baker. In the complaint, plaintiff alleges he was diagnosed incorrectly as a diabetic in violation of the Eighth Amendment. He seeks $ 1,800,000.00 in compensatory damages, $ 2,000,000.00 in "nominal and/or special damages, and an order for a complete physical examination at the Cleveland Clinic.

*Background*

Mr. Kellar has been incarcerated in the Richland Correctional Institution since February 22, 2005. He signed up for nurse's sick call complaining of intermittent chest pain in June

2005. During this medical visit, his vital signs all appeared to be within the normal range, and a urinalysis was conducted. He was given a pass for doctor's sick call later in the week.

When Mr. Kellar reported for medical appointment, Dr. Williams told him he was a diabetic and issued a prescription for Glipizide. Mr. Kellar disagreed with this diagnosis, stating that he had not been a diabetic before his incarceration and questioned the need for medication. He claims Dr. Williams looked in his file and reviewed the result of a blood test before reiterating to Mr. Kellar that he was prescribing Glipizide to control his blood glucose levels.

Mr. Kellar began taking the Glipizide in June 2005. He checked his blood sugar levels twice a day and noted that his levels were extremely high. He believes the Glipizide was responsible for the elevation. He began to experience headaches, difficulty breathing, chest pains, and body aches and reported once again to doctor's sick call on June 24, 2005. Dr. Williams determined that the Glipizide was not working to lower his blood sugar and prescribed Metformin to be taken twice per day.

Thereafter, Mr. Kellar's blood sugar levels continued to rise. He indicates he was sitting in the day room of his housing unit on July 1, 2005, when he began to sweat profusely, and experienced a sudden loss of vision, loss of balance, violent headache, nausea and disorientation. He was taken to the Medical Services Department where he was immediately examined by a nurse. Subsequent blood testing revealed that his glucose level was only 34. He was given a liquid nutritional drink and his glucose level rose to 38. Mr. Kellar was then given "instant glucose" which elevated his blood sugar level to 42. He contends he was admitted to the infirmary in a "pre diabetic coma state." (Compl. at 11.) Medical personnel continued to give him food to boost his blood sugar until it eventually reached 443.

Mr. Kellar was advised by Dr. Williams on July 15, 2005 that he was no longer to receive Metformin and would be prescribed Glipizide once again. Mr. Kellar argued that he was not a diabetic and informed Dr. Williams that his blood glucose levels had been normal even though he had not been taking his medications. He contends that Dr. Williams began to review the medical file and discovered that the blood test upon which he had relied at Mr. Kellar's first visit had actually been misfiled. It pertained to another inmate named Daniels. He claims that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

## *Exhaustion of Administrative Remedies*

A prisoner must allege and show that he has exhausted all available administrative remedies before filing a civil rights action in federal court to challenge the conditions of his confinement. 42 U.S.C. §1997e; Wyatt v. Leonard, 193 F.3d 876, 878 (6th Cir. 1999); Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1988), cert. denied, 525 U.S. 833 (1998). To establish that he exhausted his remedies prior to filing suit, the prisoner must plead his claims with specificity and show that he has exhausted his administrative remedies with respect to each allegation against each defendant by attaching to the complaint a copy of the applicable administrative dispositions or, in the absence of written documentation, describing with specificity the administrative proceedings and their outcomes. Knuckles-El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). The prisoner must exhaust each specific claim against each defendant named in the complaint to satisfy the exhaustion requirement. See Curry v. Scott, 249 F.3d 493, 504-05 (6th Cir. 2001). Moreover, the prisoner must specifically grieve allegations of retaliation or conspiracy against the defendants he names in his complaint. Garrison v. Walters, No. 00-1662, 2001 WL 1006271 (6th Cir. Aug. 24, 2001); Curry, 249 F.3d at 504-05. In the absence of such particularized averments concerning exhaustion,

3

the action must be dismissed. Id.

Ohio Administrative Code § 5120-9-31 sets forth a three-step grievance procedure for administrative remedies for inmates housed in Ohio prisons. Under this section, an inmate initiates the grievance procedure by filing an Informal Complaint Resolution form with the prison official whose area of responsibility is most related to the grievance. OHIO ADMIN. CODE § 5120-9-31(J)(1). If the inmate is dissatisfied with the informal complaint response, or if there has been no response to the complaint, the inmate may file a Notification of Grievance form with the Institutional Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(2). If this second step does not provide satisfactory results, the inmate may file an appeal with the office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(J)(3). The Chief Inspector's written response to the inmate's appeal is the final decision on the grievance. Grievances against the Warden and Institutional Inspector must be filed directly to the Office of the Chief Inspector. OHIO ADMIN. CODE § 5120-9-31(L). The decision of the Chief Inspector or designee is final. OHIO ADMIN. CODE § 5120-9-31(L).

Mr. Kellar has not demonstrated that he exhausted his administrative remedies for each claim against each defendant. He attaches copies of an Informal Complaint Resolution form, a Notification of Grievance form, the Institutional Inspector's Disposition of the Grievance, and his Appeal to the Chief Inspector, all expressing his displeasure with Dr. Williams's diagnosis of diabetes and the course of treatment he prescribed. While it appears arguable that Mr. Kellar completed the grievance process for his claims against Dr. Williams, there is no indication that he submitted grievances and exhausted his administrative remedies for his claims against the remaining defendants.

The United States Sixth Circuit Court of Appeals adopted a "total exhaustion"

4

requirement for prisoner complaints which fall within the parameters of 42 U.S.C. §1997e. See Bey v. Johnson, 407 F.3d 801 (6th Cir. 2005). Under this rule, if any claim in the complaint has not been exhausted, the entire complaint must be dismissed for failure to exhaust administrative remedies. Bey, 407 F.3d at 806-07. The district court no longer has the option of dismissing just the unexhausted claims and proceeding with the claims that have been submitted through the relevant grievance process. Id. A prisoner whose "mixed" complaint was dismissed may either wait until all of his claims have been exhausted to file his action, or file a new action which contains only the exhausted claims. Id. at 808. Because Plaintiff has not demonstrated that he filed grievances for each claim against each defendant, the court is required by the rule of total exhaustion to dismiss the complaint in its entirety without prejudice.

### Conclusion

Accordingly, this action is dismissed without prejudice pursuant to 42 U.S.C. §1997e. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: June 2, 2006

---

[1] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.